**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **TIARE TECHNOLOGY, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **Civil Action No. 2:21-cv-149** |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **CHICK-FIL-A, INC.,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

COMES NOW Plaintiff Tiare Technology, Inc. ("Tiare") and files this Original Complaint for Patent Infringement against Defendant Chick-fil-A, Inc. ("Chick-fil-A" or "Defendant"), alleging as follows:

### I.    INTRODUCTION

1.    Tiare invented groundbreaking mobile-ordering technology in the early 2000s and built its business on its inventions.  The fruits of this technology include a patent portfolio that includes the asserted claims in this case.  The mobile-ordering market has grown exponentially in recent years (and the COVID-19 pandemic has only accelerated the growth).  Bigger companies have disregarded Tiare's patent rights.  Chick-fil-A is one of those companies, and this case is to enforce Tiare's rights and redress the harm to Tiare.

### II.    NATURE OF THE SUIT

2.    This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

---

### III.    THE PARTIES

3.        Plaintiff **Tiare Technology, Inc.** is a Delaware corporation that maintains a corporate address at PO Box 8312, Blackwood, NJ 08012.

4.        Upon information and belief, Defendant **Chick-fil-A** is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business at 5200 Buffington Road, Atlanta, Georgia 30349-2945.  Chick-fil-A may be served with process through its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

### IV.    JURISDICTION AND VENUE

5.        This action arises under the patent laws of the United States, Title 35 of the United States Code.  Thus, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.        This Court has personal jurisdiction over Chick-fil-A.

7.        Chick-fil-A has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

8.        This Court has personal jurisdiction over Chick-fil-A in this action because Chick-fil-A has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Chick-fil-A would not offend traditional notions of fair play and substantial justice. Chick-fil-A has committed and continues to commit acts of infringement in this Chick-fil-A by, among other things, offering to sell, selling products and/or services, and/or using services that infringe the Asserted Patents, including the Chick-fil-A application.

9.     This Court has specific personal jurisdiction over Chick-fil-A in this action pursuant to due process and the Texas Long Arm Statute because the claims asserted herein arise out of or are related to Chick-fil-A's voluntary contacts with this forum, such voluntary contacts including but not limited to: (i) at least a portion of the actions complained of herein; (ii) purposefully and voluntarily placing one or more Accused Products into this District and into the stream of commerce with the intention and expectation that they will be purchased and used by customers in this District; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services, including the Accused Products, provided to customers in Texas and in this District.[1]

10.     Chick-fil-A has admitted that personal jurisdiction over it exists in a patent infringement action that, like this case, involved the Chick-fil-A application.[2]

11.     Venue is proper in this Court under 28 U.S.C. §§ 1400(b).

12.     Chick-fil-A is registered to do business in Texas, and upon information and belief, Chick-fil-A has transacted business in this District and has committed acts of direct and indirect infringement in this District.

13.     Chick-fil-A has admitted that it conducts business in this District.[3]  It has admitted that it "supports its mobile applications and its technology, and engages in marketing activities in this Judicial District."[4]

---

[1] The "Accused Products" include the Chick-fil-A application, including the devices on which the application runs.
[2] *See, e.g.*, *S3G Tech. LLC v. Chick-fil-A Inc.*, No. 2:20-CV-00114-JRG-RSP (Dkt. 13), at ¶ 3 ("Defendant admits that the Court has personal jurisdiction over it[.]"); *Aeritas, LLC v. Chick-fil-A, Inc.*, No. 6:19-CV-00052-JDK (Dkt. 9), at ¶ 8 ("Defendant Chick-fil-A, Inc. admits that the Court has personal jurisdiction over it.").
[3] *See, e.g.*, *S3G Tech. LLC v. Chick-fil-A Inc.*, No. 2:20-CV-00114-JRG-RSP (Dkt. 13), at ¶ 8 ("Defendant admits that it conducts business in this Judicial District.").
[4] *See, e.g.*, *S3G Tech. LLC v. Chick-fil-A Inc.*, No. 2:20-CV-00114-JRG-RSP (Dkt. 13), at ¶ 10.

14.     Chick-fil-A has regular and established places of business in this District.

15.     Chick-fil-A offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas and in this District.  As non-limiting examples, Chick-fil-A distributes the Accused Products directly to customers and through its partners, such as through the Apple App Store and Google Play.  Among other business, Chick-fil-A is in the business of providing mobile ordering in this District.

16.     Chick-fil-A operates multiple stores in this District.  These stores are regular and established places of business of Chick-fil-A.

17.     Chick-fil-A's website identifies multiple restaurants within this District as its own restaurants.[5]

18.     Chick-fil-A distributes its mobile ordering app to users located within this District. The use of Chick-fil-A's application in this District provides for mobile ordering from stores in this District.  Chick-fil-A puts its mobile ordering application in service within this District to allow users within this District to order from stores in this District in a manner alleged to infringe the asserted claims, as detailed herein.  On information and belief, Chick-fil-A derives a significant portion of its revenue from the use, promotion and distribution of its products and services in this District, including through the use of Defendant's Chick-fil-A application.

19.     A user also is able to order food from Chick-fil-A restaurants in the user's local area, which includes this District.  This is including based on the location of the user's mobile device to find nearby restaurants, including restaurants in this District.[6]

---

[5] *See, e.g.*, https://www.chick-fil-a.com/locations (showing dozens Chick-fil-A locations in this District).
[6] *See, e.g.*, http://www.cfacdn.com/mobile/apps/fs/shortFormNotice/index.html (explaining use of Geo-Location in Chick-fil-A iOS application).

20.    For example, Chick-fil-A provides for mobile ordering from the Broadway Square Mall location in Tyler, including providing a venue-specific application and carry-out, curbside, and dine-in mobile-ordering functionality.[7]



21.    This location is, per the application, held out as a regular and established place of business of Chick-fil-A, including for the purposes of providing the mobile-ordering functionality in the manner asserted to infringe the Asserted Patents.

22.    Chick-fil-A has adopted and ratified the franchised restaurants within this District as its places of business.  The franchised restaurants within this District are, at the very least, Chick-fil-A agents for the purposes of carrying out the mobile-ordering functionality asserted to infringe the claims.

23.    Upon information and belief, Chick-fil-A owns the exclusive rights to the Chick-fil-A brand, sells franchises and franchising rights in the Eastern District of Texas, and does not

---

[7] The paragraphs below also detail the mobile-ordering functionality at a Plano, Texas Chick-fil-A location.

permit the use of its Chick-fil-A brand or its technology, including the Accused Products, in the Eastern District of Texas except for its company-owned restaurants and licensed franchisees, such as the Chick-fil-A restaurants found within this District.  Chick-fil-A has admitted that "it owns the exclusive rights to the Chick-fil-A brand, and governs the use of its brand and its technology."[8]

24.    Upon information and belief, Defendant's franchisees are named "Chick-fil-A" with no reservations such as "authorized franchisee."

25.    Upon information and belief, Chick-fil-A provides and supports the Accused Products that infringe the patents-in-suit at Chick-fil-A restaurants in this District.

26.    The franchisees are held out to the consuming public as places of Chick-fil-A where Chick-fil-A, through its franchised restaurants, provides retail food and related services to the consuming public.

27.    Upon information and belief, Chick-fil-A's employees work with the Chick-fil-A restaurants in this District, including on issues related to sales, advertising, marketing, promotions and training.  Chick-fil-A has admitted that it "works with its restaurant locations, including locations in this Judicial District."[9]

28.    Users to Chick-fil-A's website also can seek employment from a local Chick-fil-A restaurant located in their area, which includes this District.[10]

29.    Chick-fil-A ratifies the local Chick-fil-A restaurants as places of business of Chick-fil-A by enabling a consumer who visits Chick-fil-A's website to solicit information about Chick-

---

[8] *See, e.g.*, *S3G Tech. LLC v. Chick-fil-A Inc.*, No. 2:20-CV-00114-JRG-RSP (Dkt. 13), at ¶ 9.
[9] *See, e.g.*, *S3G Tech. LLC v. Chick-fil-A Inc.*, No. 2:20-CV-00114-JRG-RSP (Dkt. 13), at ¶ 11.
[10] *See, e.g.*, https://www.chick-fil-a.com/careers/team-member-employment/employment-opportunities.

fil-A, order food from local Chick-fil-A restaurants, including via mobile ordering, including in this District, and seek employment at Chick-fil-A locations, including those located in this District.

## V.   BACKGROUND

### A.   Tiare

30.     Tiare pioneered wireless ordering almost two decades ago, before the inception and proliferation of smartphone and tablets.  Technology executives founded Tiare to revolutionize the service industry through its mobile-ordering technology.

31.     Tiare saw success.  It developed products.[11]  It provided solutions to businesses such as hotels, airports, restaurants, bars, and airlines.[12]  It had partners.[13]  It hired vendors and software developers.   It received numerous praise and awards for its work.[14]   And Tiare's innovations resulted in a portfolio of patents.

### B.   The Asserted Patents

32.     This cause of action asserts infringement of two of Tiare's patents, United States Patent Nos. 8,682,729 (the "'729 Patent") and 10,157,414 (the "'414 Patent") (collectively, the "Asserted Patents" or the "Tiare Patents").

---

[11] *See, e.g.*, https://www.tiaretech.com/;
https://web.archive.org/web/20080219175102/http://www.tiaretech.com/;
https://web.archive.org/web/20080219175102/https://www.tiaretech.com/;
https://web.archive.org/web/20100618052642/http://www.tiaretech.com:80/;
https://web.archive.org/web/20120411071039/http://www.tiaretech.com/product_sheets/Tiare_intellichaise_2010.pdf.
[12] *See, e.g.*,
https://web.archive.org/web/20080120233903/http://www.tiaretech.com/pressroom.html;
https://web.archive.org/web/20120227194146/http://www.tiaretech.com/press.html.
[13] *See, e.g.*,
https://web.archive.org/web/20120413225638/http://www.tiaretech.com/partners.html.
[14] *See, e.g.*, https://www.tiaretech.com/testimonials;
https://web.archive.org/web/20170818210312/http://tiaretech.com/news/.

33.     A true and correct copy of the '729 Patent, entitled "Patron Service System and Method," and with Julie Werbitt as the named inventor, is attached hereto as Exhibit 1.

34.     The '729 Patent duly and legally issued on March 25, 2014.

35.     A true and correct copy of the '414 Patent, entitled "Patron Service System and Method," and with Julie Werbitt as the named inventor, is attached hereto as Exhibit 2.

36.     The '414 Patent duly and legally issued on December 18, 2018.

37.     Tiare is the current owner by assignment of all rights, title, and interest in and under the '729 Patent.  Tiare has standing to sue for infringement of the '729 Patent.

38.     Tiare is the current owner by assignment of all rights, title, and interest in and under the '414 Patent.  Tiare has standing to sue for infringement of the '414 Patent.

39.     Tiare also has provided notice to the public of its patented inventions.  Tiare, for example, has listed on its website the patent numbers in its patent portfolio, including the Asserted Patents.[15]

40.     The Asserted Patents result from Tiare's inventive work in the early 2000s.  Tiare's solution, reflected in the Asserted Patents, provides a technical improvement to mobile ordering systems.

41.     Before Tiare's invention, conventional systems had significant drawbacks when it came to enabling a fulsome mobile-ordering system able that would also perform location tracking.[16]  These drawbacks flowed from how those systems were architected.

---

[15]     *See,    e.g.,*    https://web.archive.org/web/20141218065508/https://www.tiaretech.com/;
https://www.tiaretech.com/.
[16] *E.g.,* '729 Patent, 2:21–60.

42.     One type of conventional ordering systems were "centrally-located kiosks."[17] These systems were an attempt to provide some degree of mobile-ordering functionality in a venue or within the vicinity of a venue, such as a restaurant or store.  These systems had the drawbacks in that they did not provide true mobile-ordering and location-tracking functionality.[18]

43.     Another type of conventional system were point-of-sale systems.  These systems could include handheld terminals that staff could use to service customers from a distance.[19]  These systems, however, "typically only allow[ed] the staff member, to take and transmit the order on behalf of the patron."[20]  These systems did not allow a patron to place the order and they were unable to perform location tracking.[21]

44.     Tiare's inventions solve these drawbacks of conventional systems, among others. Tiare reimagined the mobile-ordering architecture by tracking portable patron units (now known as a smartphone or tablet) and providing a venue-specific application.  The conventional systems had limitations because they were unable to track location because they focused on a fixed kiosk-based or mobile point-of-sale-based solution.  Tiare recognized that it could improve upon the technical aspects of these systems—through providing mobile-ordering software for a venue (such as a restaurant or store chain) on a mobile device and tracking the location of the mobile device to facilitate the fulfillment of the order.

45.     While the concept and techniques for tracking distributed mobile computing devices of the Asserted Patents are described within the context of providing services, the concept is, at its core, a technical solution of electronic location tracking of distributed mobile computing

---

[17] *E.g.*, '729 Patent, 2:21–60.
[18] *E.g.*, '729 Patent, 2:21–60.
[19] *E.g.*, '729 Patent, 2:21–60.
[20] *E.g.*, '729 Patent, 2:21–60.
[21] *E.g.*, '729 Patent, 2:21–60.

devices.  Furthermore, Tiare developed this technology well before the advent of modern mobile computing devices such as smartphones and tablets.  Indeed, even location-tracking technologies such as commercial GPS and wireless computer networks (such as 802.11, Bluetooth, and higher-bandwidth cellular data networks) were in their nascent stages of use and could hardly be considered conventional at the time that Tiare came up with the technology embodied in the asserted claims.

46.    The subject matter of the asserted claims is rooted in computer technology and provides an unconventional solution to the problem of tracking locations of distributed mobile devices.  The claimed subject matter enables the centralized location tracking of one or more mobile-computing devices in real-time by integrating location-tracking technology into mobile-computing devices and communicating at least one location update over wireless communication networks, which did not exist in the pre-digital world.  Indeed, even the kiosk-based and point-of-sale-based systems lacked the technical capacity to perform the location tracking enabled by the asserted claims.  The technology utilizes what was at the turn of the century an unconventional use of location tracking sensors integrated into mobile computing devices to determine the location of the mobile computing devices based on electronic signals (*e.g.*, GPS, WiFi, Bluetooth, and/or cellular data) and convey location information to a server system over wireless computer networks.

47.    The claims do not merely recite customizing information or collecting and displaying data.  Although the overall environment is in the context of providing services, the claims do not simply recite a non-technical business practice; they instead recite a technical solution for tracking the location of mobile-computing devices (and, by extension, the users).

48.    The mobile-ordering field is one rooted in technology.  The field has seen significant patenting activity in recent years, reflecting the technological nature of the field.

Technology companies in the mobile-ordering space like DoorDash, GrubHub, Uber, Lyft, Instacart, and Postmates have filed hundreds of patent applications.[22]

49.     Tiare's Patents have likewise been cited in patent applications by technology companies such as AT&T,[23] eBay,[24] Bally Gaming,[25] Intel,[26] RockSpoon,[27] Uptown Network,[28] Quick Check,[29] and Monscierge.[30]  This further underscores that the patent claims are directed to the technical advancements discussed above.

50.     Tiare's Patents have undergone extensive examination before the U.S. Patent & Trademark Office ("Patent Office"), spanning the better part of two decades.  Tiare retained highly-skilled patent counsel to prosecute its patents.  Tiare retained Greenblum & Bernstein (including the former Acting Chief Judge of the Patent Office).  For the application that issued as the '414 Patent, Tiare retained Fish & Richardson P.C. for prosecution.  Fish is one of the country's

---

[22] http://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO2&Sect2=HITOFF&u=%2Fnetahtml%2FPTO%2Fsearch-adv.htm&r=0&p=1&f=S&l=50&Query=+%28an%2Fdoordash+or+an%2Fgrubhub+or+an%2Flyft+or+an%2F%28uber+and+technologies%29+or+an%2Finstacart+or+an%2Fpostmates%29&d=PTXT (listing over 700 patents).
[23] *See, e.g.*, 10,152,700.
[24] *See, e.g.*, 10,096,011.
[25] *See, e.g.*, 10,403,081.
[26] *See, e.g.*, 8,390,436.
[27] *See, e.g.*, 10,719,858.
[28] *See, e.g.*, 10,127,585.
[29] *See, e.g.*, 9,633,344.
[30] *See, e.g.*, 9,436,958.

---

premier patent prosecution law firms in the United States[31] and has prosecuted thousands of patents for technology companies such as Google, Intel, Twitter, Cisco, Adobe, and Apple.[32]

51.     The Patent Office's examination of Tiare's patent portfolio included extensive consideration of Section 101 issues.[33]  During prosecution, the Patent Office expressly considered the eligibility of the patent claims under 35 U.S.C. § 101, the Supreme Court's *Alice v. CLS Bank* decision, and the Federal Circuit decisions applying the *Alice* framework.[34]  The Patent Office ultimately found that the claims, including the '414 Patent claims, were valid and recited patent-eligible subject matter.

52.     The Asserted Patents claim patent-eligible subject-matter.

**C.     Chick-fil-A**

53.     Chick-fil-A offers a mobile-ordering solution.   It provides a venue-specific application, exemplified below.

---

[31] *See, e.g.*, https://www.fr.com/services/patent-law/patent-prosecution/ ("Our patent prosecutors obtain durable patents that take into account our clients' long-term objectives and that will be able to withstand future challenges."); https://www.fr.com/fish-secures-more-issued-patents-2020/ ("Fish & Richardson obtained more U.S. utility patents in 2020 than any other firm[.]"); https://www.fr.com/top-ptab-law-firm-2020-mip/ ("Fish & Richardson has been named the #1 law firm at the Patent Trial and Appeal Board (PTAB) for 2020[.]").

[32] http://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO2&Sect2=HITOFF&u=%2Fnetahtml%2FPTO%2Fsearch-adv.htm&r=0&p=1&f=S&l=50&Query=lrep%2Ffish+and+lrep%2Frichardson&d=PTXT.

[33] *See, e.g.*, File History for App. No. 13/073,368 (considering patent claims under *Alice v. CLS Bank* and its progeny and allowing them); File History for App. No. 15/820,195 (same).

[34] *See, e.g.*, File History for App. No. 13/073,368 (considering patent claims under *Alice v. CLS Bank* and its progeny and allowing them); File History for App. No. 15/820,195 (same); Oct. 31, 2018 Notice of Allowance; October 28, 2018 Response to Office Action and Remarks; August 28, 2018 Final Office Action; March 28, 2018 Response to Office Action and Remarks; December 29, 2017 Office Action.



54.     Chick-fil-A also tracks the location of the smartphone or tablet (and, by extension, the user) to, among other things, respond to requests to find nearby restaurants, confirm the restaurant location for mobile orders, offer promotions, and/or manage online delivery.[35]  Chick-fil-A also utilizes functionality that requests (and for certain functionality requires) constant access to a mobile device's location services and updates the location, including as the user approaches the restaurant.[36]

---

[35] http://www.cfacdn.com/mobile/apps/fs/shortFormNotice/index.html.

[36] https://medium.com/rakutenready/ios-14-a-guide-to-accessing-precise-location-7c4bf80b709e ("Below, you can see how Chick-fil-A tracks their customer's trip to their location, then prompts the customer to click the 'Prepare my order now' button once they approach. By doing this, Chick-fil-A is able to time order preparation perfectly."); https://global.rakuten.com/corp/news/press/1220_01.html (explaining that Rakuten works with Chick-fil-A "to scale their order ahead programs"); https://developer.rakutenready.com/en/docs/getting-started/quickstart-ios-app/; https://developer.rakutenready.com/en/docs/getting-started/quickstart-android-app/; https://rakutenready.com/developers/; https://developer.rakutenready.com/docs/reference/ios/Classes/CSUserStatusUpdate.html.

55.   Chick-fil-A has had notice of Tiare and the '414 and '729 Patents, at least as early as the filing of this Complaint.  Tiare met with Chick-fil-A executives starting in 2017 over a multi-year period regarding Tiare's patented technology.

56.   Chick-fil-A's use of Tiare's patented technology has generated significant revenue and benefits for Chick-fil-A.  The Chick-fil-A application is one of the top Food & Drink applications listed in the Google Play and Apple App Stores (it is #8 in the Apple App Store).  The Chick-fil-A Google Play application has been installed over 10 million times and the app has been rated on Google Play and the Apple App store over 1 million times.  The app has been used, on information and belief, to complete millions of mobile orders.[37]

57.   The top feature of the Chick-fil-A app is its ability to provide "mobile ordering," as shown below in the four features that Chick-fil-A identifies for its application.[38]

FEATURES
1. Mobile ordering – Place your order through your phone, choose your preferred pick-up method, and let us know when you arrive.

2. Earn points – Earn points with every purchase by scanning your QR code, paying with Chick-fil-A One™, or placing mobile orders at Chick-fil-A.

3. Redeem rewards – Use your points to redeem available food rewards of your choice.

4. Customized menu – We'll remember what you like and – even better – how you like it.

58.   Each of the four features that Chick-fil-A touts above with its mobile app are covered by or enabled by the claims of the Asserted Patents.  Chick-fil-A's use of Tiare's patented

---

[37]  *See, e.g.*, https://www.businessinsider.com/chick-fil-a-mobile-sales-skyrocket-2019-5 ("Digital now makes up almost 20% of Chick-fil-A's sales, the company recently told Business Insider. That is a significant increase from 6% at the beginning of 2018 and 16% at the end of the year.").
[38]  https://apps.apple.com/us/app/chick-fil-a/id488818252.

technology thus drives demand for the Chick-fil-A application and the mobile orders completed therethrough.

59.     Chick-fil-A's improper gains through its use of Tiare's patented technology has harmed Tiare.  This case is to redress that harm.

## VI.    CLAIMS

### A.    Infringement of the '729 Patent

60.      The allegations of each foregoing paragraph are incorporated by reference as if fully set forth herein and form the basis for the following cause of action against Defendant.

61.     The Accused Products are covered by at least claim 1 of the '729 Patent.

62.     Chick-fil-A has directly infringed and continues to infringe at least claim 1 of the '729 Patent in violation of 35 U.S.C. § 271(a) by, directly or through intermediaries and without Tiare's authority, making, using, selling, or offering to sell the Accused Products in the United States, or importing the Accused Products into the United States.

63.     Chick-fil-A has been on notice of the Asserted Patents since at least the filings of this Complaint and prior to the Complaint.

64.     Chick-fil-A has been on notice of its infringement since at least the filing of this Complaint and prior to the Complaint.

65.     Further and in the alternative, Defendant has been actively inducing infringement of at least claim 1 of the '729 Patent in violation of 35 U.S.C. § 271(b).  Users of the Accused Products directly infringed at least claim 1 of the '729 Patent when they used the Accused Products in the ordinary, customary, and intended way.  Defendant's inducements included, without limitation and with specific intent to encourage the infringement, knowingly inducing consumers to use the Accused Products within the United States in the ordinary, customary, and intended way

by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such consumers (for example, via distributing the Accused Products to mobile phones through app stores and instructing users to use the Accused Products) how to use the Accused Products in the ordinary, customary, and intended way, which Defendant knows or should know infringes at least claim 1 of the '729 Patent.  Defendant's inducements may further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to use the Accused Products within the United States, or knowingly inducing customers to use the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to make, use, sell, or offer to sell the Accused Products in the United States, which Defendant knows or should know infringes at least claim 1 of the '729 Patent.

66.     Defendant knew or should have known of the '729 Patent but was willfully blind to the existence of the '729 Patent.  Defendant has had actual knowledge of the '729 Patent since at least as early as the filing and service of this Complaint.  By the time of the trial of this case, Defendant will have known and intended that its continued actions since receiving such notice would infringe and actively induce and contribute to the infringement of one or more claims of the '729 Patent.  Defendant's infringement of the '729 Patent has been willful and deliberate.

67.     Chick-fil-A performs a method of using a wireless patron unit (e.g., a smartphone or tablet) within a venue or within the vicinity of the venue (e.g., the restaurant from which a user may order).

68.     Chick-fil-A provides at least one patron with a wireless patron unit by either permitting the at least one patron to temporarily use a venue-owned wireless patron unit that includes at least one venue specific application program, or by providing at least one venue specific

application program to the at least one patron for downloading into a patron-owned wireless communication device that can be used during the at least one patron's visit to the venue.

69.      Chick-fil-A provides at least one patron with a wireless patron unit (e.g., a smartphone or tablet) by providing at least one venue specific application program (e.g., the application software for a restaurant from which a user may order) for downloading into a patron-owned wireless communication device (e.g., a smartphone or tablet) that can be used during a visit to the venue, exemplified below.



70.      Chick-fil-A connects the wireless patron unit (e.g., the smartphone or tablet) to a server enabling communication between the wireless patron unit and the server (e.g., the server in communication with the smartphone or tablet via the application), exemplified below.



https://play.google.com/store/apps/details?id=com.chickfila.cfaflagship



71.     Chick-fil-A enters a patron order for at least one item or service provided by the venue into the wireless patron unit.  Chick-fil-A enters a patron order (e.g., a user's order) for at least one item or service provided by the venue (e.g., an item from a menu) into the wireless patron unit (e.g., a smartphone or tablet), exemplified below.



72.     Chick-fil-A determines a current location of the wireless patron unit.  Chick-fil-A determines the location of, for example, a smartphone or tablet, as exemplified below.

**Geo-Location (GPS, Wi-Fi, or user-entered)**

With your permission, we use and analyze your location information
we collect from you and your device to (1) respond to your requests to
find nearby restaurants; (2) confirm the restaurant location for your
mobile orders; (3) offer promotions; and/or (4) manage online delivery.

http://www.cfacdn.com/mobile/apps/fs/shortFormNotice/index.html



https://play.google.com/store/apps/details?id=com.chickfila.cfaflagship



73.    Chick-fil-A also requests (and for certain functionality requires) that location

services are always on as part of its software functionality that tracks and updates the current

location of the mobile device.[39]  That functionality, among other things, requires that the mobile device enable location services at all times during the use of the application, detailed in the software-development kit ("SDK") documentation.[40]

74.     Chick-fil-A updates a status of the patron order, and the current location of the wireless patron unit when the patron moves to a different location, on the wireless patron unit.

75.     Chick-fil-A updates a status of the patron order (e.g., a mobile order) on the wireless patron unit (e.g., a smartphone or tablet), including, for example, showing that an order was placed, in progress, cancelled, and mobile-ordering methods, pickup methods, payment options, other options and/or altered/updated.

76.     Chick-fil-A updates the current location of the wireless patron unit (e.g., a smartphone or tablet) when the patron moves to a different location, as exemplified below.[41]

---

[39] *See, e.g.*, https://medium.com/rakutenready/ios-14-a-guide-to-accessing-precise-location-7c4bf80b709e ("Below, you can see how Chick-fil-A tracks their customer's trip to their location, then prompts the customer to click the 'Prepare my order now' button once they approach. By doing this, Chick-fil-A is able to time order preparation perfectly."); https://global.rakuten.com/corp/news/press/1220_01.html (explaining that Rakuten works with Chick-fil-A "to scale their order ahead programs"); https://developer.rakutenready.com/en/docs/getting-started/quickstart-ios-app/; https://developer.rakutenready.com/en/docs/getting-started/quickstart-android-app/; https://rakutenready.com/developers/; https://developer.rakutenready.com/docs/reference/ios/Classes/CSUserStatusUpdate.html.
[40] *See id.*
[41] https://medium.com/rakutenready/ios-14-a-guide-to-accessing-precise-location-7c4bf80b709e.

---



77.    Chick-fil-A also requests (and for certain functionality requires) that location services are always on as part of its software functionality that tracks and updates the current location of the mobile device as the patron (and therefore the device) move locations.  That functionality, among other things, requires that the mobile device enable location services at all times during the use of the application, including location updates, as detailed in the SDK documentation.[42]

78.    Chick-fil-A displays the patron order on a display of the wireless patron unit (e.g., a smartphone or tablet), exemplified below:

---

[42] https://developer.rakutenready.com/en/docs/getting-started/quickstart-ios-app/;
https://developer.rakutenready.com/en/docs/getting-started/quickstart-android-app/;
https://developer.rakutenready.com/en/docs/how-arrive-works/;
https://rakutenready.com/developers/ ("Based on the user's trip information, machine learning is leveraged to predict customer arrival time[.]");
https://developer.rakutenready.com/en/docs/getting-started/quickstart-ios-monitor-app/
(disclosing CSMonitoringSession class to process "[u]ser location updates" in an application; CSUserStatusUpdate class, which include the location of the smartphone or tablet via the statusUpdate.location property);
https://developer.rakutenready.com/docs/reference/ios/Classes/CSUserStatusUpdate.html
(disclosing that location property provides "[t]he location of the user," which is populated "when the user is close the site").



**B.      Infringement of the '414 Patent**

79.      The allegations of each foregoing paragraph are incorporated by reference as if fully set forth herein and form the basis for the following cause of action against Defendant.

80.      The Accused Products are covered by at least claim 8 of the '414 Patent.

81.      Chick-fil-A has directly infringed and continues to infringe at least claim 8 of the '414 Patent in violation of 35 U.S.C. § 271(a) by, directly or through intermediaries and without Tiare's authority, making, using, selling, or offering to sell the Accused Products in the United States, or importing the Accused Products into the United States.

82.      Chick-fil-A has been on notice of the Asserted Patents since at least the filings of this Complaint and prior to the Complaint.

83.      Chick-fil-A has been on notice of its infringement since at least the filing of this Complaint and prior to the Complaint.

84.      Further and in the alternative, Defendant has been actively inducing infringement of at least claim 8 of the '414 Patent in violation of 35 U.S.C. § 271(b).  Users of the Accused

Products directly infringed at least claim 8 of the '414 Patent when they used the Accused Products in the ordinary, customary, and intended way.   Defendant's inducements included, without limitation and with specific intent to encourage the infringement, knowingly inducing consumers to use the Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such consumers (for example, via distributing the Accused Products to mobile phones through app stores and instructing users to use the Accused Products) how to use the Accused Products in the ordinary, customary, and intended way, which Defendant knows or should know infringes at least claim 8 of the '414 Patent.   Defendant's inducements may further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to use the Accused Products within the United States, or knowingly inducing customers to use the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to make, use, sell, or offer to sell the Accused Products in the United States, which Defendant knows or should know infringes at least claim 8 of the '414 Patent.

85.     Defendant knew or should have known of the '414 Patent but was willfully blind to the existence of the '414 Patent.  Defendant has had actual knowledge of the '414 Patent since at least as early as the filing and service of this Complaint.  By the time of the trial of this case, Defendant will have known and intended that its continued actions since receiving such notice would infringe and actively induce and contribute to the infringement of one or more claims of the '414 Patent.  Defendant's infringement of the '414 Patent has been willful and deliberate.

86.     Chick-fil-A performs the computer-implemented method detailed below.

87.     Chick-fil-A provides over a wireless communications channel (*e.g.*, over a cellular, WiFi, and/or Bluetooth network connection), a venue-specific application (*e.g.*, the application software for a restaurant from which a user may order), exemplified below.



88.     Chick-fil-A communicates, by the one or more processors, with the mobile computing device over the wireless communication channel to authenticate, based on a security protocol, a user of the venue-specific application on the mobile computing device.

89.     Chick-fil-A communicates over a wireless communication channel (e.g., over a cellular, WiFi, and/or Bluetooth network connection) to authenticate, based on a security protocol (e.g., a login, password, or encrypted communications), a user of the venue-specific application on a smartphone.



https://play.google.com/store/apps/details?id=com.chickfila.cfaflagship



90.     Chick-fil-A authenticates a user via a login and password into the application (e.g., via logging in via Apple, Google, Facebook, or email), as well as securing information associated with purchasing the order, such as the user's financial account information (e.g., PayPal, gift card number, or a credit card number).[43]

91.     Chick-fil-A receives, by the one or more processors, location information from the mobile computing device.  Chick-fil-A receives location information of the mobile computing device (e.g., a smartphone or tablet) through, for example, the device's location services, as exemplified below:

---

[43] https://www.chick-fil-a.com/legal#privacy_policy ("We seek to keep your personal information secure by implementing reasonable technical, administrative, and physical safeguards to help us protect such information from unauthorized access, use, and disclosure. When we collect or transmit sensitive information such as a credit card number, we endeavor to use industry standard methods to protect that information.").

**Geo-Location (GPS, Wi-Fi, or user-entered)**

With your permission, we use and analyze your location information
we collect from you and your device to (1) respond to your requests to
find nearby restaurants; (2) confirm the restaurant location for your
mobile orders; (3) offer promotions; and/or (4) manage online delivery.

http://www.cfacdn.com/mobile/apps/fs/shortFormNotice/index.html



https://play.google.com/store/apps/details?id=com.chickfila.cfaflagship



92.     Chick-fil-A also requests (and for certain functionality requires) that location services are always on as part of its software functionality that tracks and updates the current location of the mobile device.[44]  That functionality, among other things, requires that the mobile device enable location services at all times during the use of the application, detailed in the SDK documentation.[45]

93.     Chick-fil-A determines, by the one or more processors, a location of the mobile computing device at a first time based on the location information.  Based on the location information provided, Chick-fil-A determines the location of the smartphone or tablet, as detailed above.

94.     Chick-fil-A maps, by the one or more processors, the location to a region that is associated with a venue, exemplified below:

---

[44] *See, e.g.*, https://medium.com/rakutenready/ios-14-a-guide-to-accessing-precise-location-7c4bf80b709e ("Below, you can see how Chick-fil-A tracks their customer's trip to their location, then prompts the customer to click the 'Prepare my order now' button once they approach. By doing this, Chick-fil-A is able to time order preparation perfectly."); https://global.rakuten.com/corp/news/press/1220_01.html (explaining that Rakuten works with Chick-fil-A "to scale their order ahead programs"); https://developer.rakutenready.com/en/docs/getting-started/quickstart-ios-app/; https://developer.rakutenready.com/en/docs/getting-started/quickstart-android-app/; https://rakutenready.com/developers/; https://developer.rakutenready.com/docs/reference/ios/Classes/CSUserStatusUpdate.html.
[45] *See id.*



95.     Chick-fil-A receives, from the mobile computing device, order information for the venue that indicates a user selection of an order option from the venue-specific application.  Chick-fil-A receives order information from a user input that indicates a service request (*e.g.* a food order) through the venue-specific application, exemplified below:



96.    Chick-fil-A receives, by the one or more processors, updated location information from the mobile computing device.  Chick-fil-A receives updated location information from the mobile computing device (e.g., a smartphone or tablet), as exemplified below.[46]



97.    Chick-fil-A also requests (and for certain functionality requires) that location services are always on as part of its software functionality that tracks and updates the current location of the mobile device as the patron (and therefore the device) move locations.  That functionality, among other things, requires that the mobile device enable location services at all times during the use of the application, including location updates, as detailed in the SDK documentation.[47]

---

[46] https://medium.com/rakutenready/ios-14-a-guide-to-accessing-precise-location-7c4bf80b709e.
[47] https://developer.rakutenready.com/en/docs/getting-started/quickstart-ios-app/;
https://developer.rakutenready.com/en/docs/getting-started/quickstart-android-app/;
https://developer.rakutenready.com/en/docs/how-arrive-works/;
https://rakutenready.com/developers/ ("Based on the user's trip information, machine learning is leveraged to predict customer arrival time[.]");
https://developer.rakutenready.com/en/docs/getting-started/quickstart-ios-monitor-app/
(disclosing CSMonitoringSession class to process "[u]ser location updates" in an application; CSUserStatusUpdate class, which include the location of the smartphone or tablet via the statusUpdate.location property);

98.     Chick-fil-A determines, by the one or more processors, an updated location of the mobile computing device at a second time based on the updated location information.  Chick-fil-A determines updated locations of the smartphone or tablet at multiple points after receiving the updated location data at a second time, including as the device approaches the site, as detailed above.

## VII.     DAMAGES

99.     The allegations of each foregoing paragraph are incorporated by reference as if fully set forth herein.

100.     For the above-described infringement, Tiare has been injured and seeks damages to adequately compensate it for Defendant's infringement of the Asserted Patents.  Such damages, to be proved at trial, should be no less than the amount of a reasonable royalty under 35 U.S.C. § 284, together with Tiare's costs and expenses, pre-judgment and post-judgment interest, and supplemental damages for any continuing post-verdict or post-judgment infringement, with an accounting as needed.

101.     As set forth above, Defendant's infringement of the Asserted Patents has been willful, such that Tiare seeks treble damages under 35 U.S.C. § 284 as appropriate.

102.     Defendant's willful infringement of the Asserted Patents renders this case exceptional under 35 U.S.C. § 285, such that Tiare seeks all reasonable attorneys' fees and costs incurred in this litigation, together with pre-judgment and post-judgment interest thereon.

## VIII.     PRAYER FOR RELIEF

Tiare respectfully requests the following relief:

---

https://developer.rakutenready.com/docs/reference/ios/Classes/CSUserStatusUpdate.html (disclosing that location property provides "[t]he location of the user," which is populated "when the user is close the site").

a.      A judgment in favor of Tiare that Defendant has infringed each Asserted Patent, whether literally or under the doctrine of equivalents, and that such infringement is willful as described herein;

b.      A judgment and order requiring Defendant to pay Tiare its damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of each Asserted Patent as provided under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict or post-judgment infringement with an accounting as needed; and

c.      A judgment and order requiring Defendant to pay Tiare enhanced damages for willful infringement as provided under 35 U.S.C. § 284;

d.       A judgement and order enjoining Defendant from infringing upon the Asserted Patents;

e.      A judgment and order finding this case exceptional and requiring Defendant to pay Tiare its reasonable attorneys' fees and costs incurred in this litigation pursuant to 35 U.S.C. § 285, together with pre-judgment and post-judgment interest thereon; and

f.      Such other and further relief as the Court deems just and proper.

## IX.  JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Tiare requests a jury trial of all issues triable of right by a jury.

Dated: April 29, 2021                              Respectfully submitted,

By: /s/ William E. Davis, III
William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

**Davis Firm, PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

***Counsel for Tiare Technology, Inc.***